**SCHLEIER LAW OFFICES, P.C.**
428 E. Thunderbird Road, PMB 541
Phoenix, Arizona 85022
Telephone: (602) 277-0157
Facsimile: (602) 654-3790

BRADLEY H. SCHLEIER, ESQ. #011696
Email: brad@schleierlaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Powers, a single woman,<br><br>Plaintiff,<br><br>v.<br><br>MC Residential Communities, LLC, an Arizona corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff, by and through counsel, for her Complaint against Defendant, alleges:

**I. NATURE OF CLAIM**

1. This is a proceeding for damages against Defendant MC Residential Communities, LLC, [hereinafter "Defendant MC or Defendant"] to redress the discrimination and retaliation protections of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ["Title VII], the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 ["ADEA"], and the Arizona Employment Protection Act, A.R.S. §23-1501 ["AEPA"].

## II. JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) as Plaintiff has alleged civil rights under federal discrimination/civil rights laws found in Title VII and the ADEA. This Court also has supplemental jurisdiction of Plaintiff's state law-based claim (AEPA) pursuant to 28 U.S.C. §1367.

3. Plaintiff timely filed a charge with the Equal Employment Opportunity Commission for violations of the Title VII and the ADEA and received a Right to Sue letter on May 10, 2024.

## III. VENUE

4. Based on 28 U.S.C. § 1391, Title VII and the ADEA, venue is proper because the acts detailed in this Complaint arise within the State of Arizona and the jurisdiction of this Court.

## IV. PARTIES

5. Plaintiff Cynthia Powers ("Plaintiff") is a single female over the age of 40 who was employed by Defendant as Chief Marketing Director.

6. Defendant MC Residential Communities, LLC is an Arizona corporation and an employer with respect to Title VII, ADEA, and the AEPA.

## V. FACTUAL ALLEGATIONS

7. Prior to beginning work for Defendant, Plaintiff had 25 years of marketing experience. Plaintiff began working for Defendant in August 2022. Plaintiff's job duties included taking charge of marketing duties for over 7500 property doors and property

management tasks. Plaintiff performed marketing services for Defendant's subsidiary entities MC Residential Property Management, MC Companies and Ken McElroy Brand.

8. Upon her hire, Plaintiff began to hire a marketing team (the former team having been disbanded). Plaintiff launched 29 websites in the first six months of her employment, implemented and managed 35 advertising campaigns and launched other apps for the entities which she performed marketing services.

9. Plaintiff increased revenues and reduced costs by $400,000 and increased the occupancy rate in the properties managed. Plaintiff reported directly to Ken McElroy, who consistently applauded Plaintiff's accomplishments and efforts.

10. Beginning in January 2023, Plaintiff received reports related to a hostile work environment (sexual) in the Tucson office relating to three individuals. The complaints related to inappropriate dress by one female (which violated the dress code), overt sexual behavior and misuse of Defendant's hotel and airplane policy.

11. Plaintiff relayed these reports on numerous occasions to Human Resources Director Sharon Von Kilsdonk. No action was taken.

12. In February 2023, while meeting with Chief Investment Officer Charlie Kosnick, Plaintiff reported concerns about projects that were not completed or completed with poor quality, yet the Renovation Team of Defendant submitted invoices stating such projects had been completed.

13. As the Chief Marketing Officer, Plaintiff had a statutory fiduciary duty to other officers and the shareholder/members of Defendant MC.

14. During this February 2023 meeting, Plaintiff also discussed with Mr. Kosnick concerns from another Director about the misuse of expense accounts being utilized to pay for dozens of 5-star hotel fees.

15. Again, Plaintiff reported her concerns in light of her fiduciary duty and desire to protect the shareholder/members of Defendant MC.

16. In March 2023 and also in April 2023, Plaintiff spoke with Ms. Von Kilsdonk about inappropriate misogynistic and degrading comments made by a male employee to females as well as that male employee asking another employee to lie to a lender about a completed renovation. Ms. Von Kilsdonk's response was that the Renovation Team had been the target of numerous complaints for 6 years and nothing would change.

17. In mid-April 2023, Plaintiff reported to Human Resources a racial comment made. Again, no action was taken.

18. During this same time from September 2022 to April 11, 2023, Plaintiff spoke with one of the company principal's Ross McCallister about what she believed was potentially fraudulent activity with regard to a renovation project at a property known as Briarcrest. In addition to bringing forward potential fraudulent activity, Plaintiff, believed it was her fiduciary duty as a member of the "C-Suite" (Chief Marketing Officer) to bring such potential issues to the attention of Defendant MC principals such as Mr. McCallister and Mr. McElroy as it could affect shareholder/member value.

19. Mr. McCallister pushed back on her concerns and took no action.

20. In July 2023, Plaintiff reported insubordination and violation of company values to Human Resources which took place during a construction update team meeting.

This was not the first time that particular Leasing Director had been rude and disrespectful toward Plaintiff.

21. In each instance of Plaintiff's reports of violations of law and/or company policies, no investigation was conducted and no action was taken.

22. On July 5, 2023, Dan Martin was hired as President. Plaintiff was informed she now reported directly to Mr. Martin.

23. Plaintiff introduced Mr. Martin to her team on July 6, 2023. On August 3, 2023, their second meeting, Mr. Martin made comments to Plaintiff stating she was hard-headed and not a team player since she worked remotely most of the time.

24. On August 14, 2023 (the third meeting), Plaintiff was terminated. Mr. Martin interrupted Plaintiff who was conducting a performance review and simply announced that Defendant was "going in another direction."

25. Plaintiff understood that both Mr. McElroy and Mr. McCallister were involved in and/or approved the decision to terminate Plaintiff as they had been with the termination of any and all upper-level management employees.

26. Plaintiff learned that her position was immediately offered to a younger male employee on her team who turned down the promotion.

27. Plaintiff was never informed of any job deficiencies, never asked for a marketing report, no discipline or progressive discipline as outlined in Defendant's Handbook. Plaintiff was never afforded the opportunity to correct or address any alleged job deficiencies or make any necessary improvements in order to retain her job.

28. Plaintiff was aware of another upper-level younger male employee who was provided several written warnings and opportunities to correct his substandard performance before being terminated.

29. During the time that Plaintiff was employed and in the time period shortly thereafter, Plaintiff has learned that a number older female management level employees were also terminated. In most if not all cases, the older female employees, like Plaintiff, were not provided any type of warning or corrective action prior to termination.

## COUNT I

**(Gender Discrimination in Violation of Title VII)**

30. Plaintiff realleges the allegations above as if fully set forth herein.

31. Under Title VII, it is unlawful for an employer to discriminate against the terms and conditions of employment of its employees.

32. Defendant has discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII as a result of terminating Plaintiff.

33. Plaintiff's job performance was exemplary at the time of her termination and her position was offered to a younger, male employee.

34. Defendant's reasons for Plaintiff's termination were false and merely a pretext for discrimination.

35. Similarly situated male employees were provided written warnings and performance counseling before being terminated for performance reasons, no such procedures were utilized with Plaintiff or other similarly situated female employees.

36. Defendant's termination of Plaintiff was motivated by her sex and was a violation of Title VII's prohibition of sex discrimination.

37. As a direct result of the sex discrimination referenced herein, Plaintiff has suffered and continues to suffer lost wages and the value of benefits.

38. As a direct result of the sex discrimination, Plaintiff has sustained emotional distress, including but not limited to loss of reputation, loss of profession, and emotional pain, suffering, and humiliation.

39. The actions of Defendant were done in reckless indifference to Plaintiff's federally protected rights and Plaintiff is therefore entitled to recover punitive and exemplary damages.

## COUNT II

### (Age Discrimination in Violation of the ADEA)

40. Plaintiff realleges the allegations above as if fully set forth herein.

41. Under ADEA, it is unlawful for an employer to discriminate against the terms and conditions of employment of its employees based on Age.

42. Defendant has discriminated against Plaintiff in the terms and conditions of her employment on the basis of her age in violation of the ADEA as a result of terminating Plaintiff.

43. Plaintiff's job performance was exemplary at the time of her termination and her position was offered to a younger, male employee.

44. Defendant's reasons for Plaintiff's termination were false and merely a pretext for discrimination.

45. Similarly situated younger employees were provided written warnings and performance counseling before being terminated for performance reasons, no such procedures were utilized with Plaintiff or other similarly situated older employees.

46. Defendant's termination of Plaintiff was motivated by her age and was a violation of Title VII's prohibition of age discrimination.

47. As a direct result of the age discrimination referenced herein, Plaintiff has suffered and continues to suffer lost wages and the value of benefits.

48. The actions of Defendant were intentional in violation of Plaintiff's protected rights and Plaintiff is therefore entitled to recover liquidated damages.

## COUNT III

### (Retaliation Discrimination in Violation of Title VII)

49. Plaintiff realleges the allegations above as if fully set forth herein.

50. Plaintiff engaged in protected activity when she opposed practices that violated Title VII of the Civil Rights Act of 1964.

51. Plaintiff reported sexually inappropriate behavior and comments that were creating a hostile work environment in violation of Title VII for herself and employees working in Defendant's office in Tucson.

52. Plaintiff also reported misogynistic comments and racially/national origin based insensitive comments that also violated Title VII.

53. Said reports about the hostile work environment and other discriminatory behavior were made by Plaintiff to management and the Director of Human Resources from the end of 2023 through April 2023 and no action was taken.

54. Defendant discriminated and retaliated against Plaintiff and conditions of her employment when her complaints were ignored and she was terminated as a result of his opposition to practices that he believed to be gender/race/national origin discrimination and sexual harassment (hostile work environment) in violation of Title VII.

55. As a direct and proximate result of the Defendant's retaliation referenced herein, Plaintiff has suffered lost wages and the value of benefits. Such damages are continuing now and into the future.

56. As a direct and proximate result of the Defendant's retaliation referenced herein, Plaintiff has sustained damages in the form of emotional distress including but not limited to depression, anxiety, sleeplessness, loss of professional standing and such other damages which may be proven at trial.

57. Defendant's conduct is willful and is a dereliction of Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages.

## COUNT IV

### (Violation of the AEPA)

58. Plaintiff realleges the allegations above as if fully set forth herein.

59. The Arizona Employment Protection Act, A.R.S. §23-1501 ("AEPA"), an employee has a claim against an employer arising out of the termination of their employment if:

> c) The employer has terminated the employment relationship in retaliation for: . . .
>
> (i) The refusal by the employee to commit an act or omission that would violate the Constitution of Arizona or the statutes of this state.
>
> (ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

60. Plaintiff had a reasonable belief and pursuant to her statutory fiduciary duty, that certain financial improprieties and potential fraud was taking place that required attention by Defendant MC management.

61. Plaintiff's reports were made to MC Management in light of statutory requirements to report financial improprieties, as well as statutory protections relating to fraud.

9

62.     Within a short period of time after her last reports, Plaintiff's employment was terminated by Defendant.

63.     The reason for Plaintiff's termination was false and merely a pretext.

64.     Said termination of employment was a violation of AEPA's protection against retaliation for Plaintiff's good faith report that Defendant's employees were potentially violating the law and were made pursuant to Plaintiff's legal duty.

65.     As a result of Defendant's violation of the AEPA, Plaintiff has suffered lost wages and the value of benefits to be proven at trial. Such damages are continuing now and into the future.

66.     As a result of Defendant's violation of the AEPA, Plaintiff has sustained damages in the form of severe emotional distress including but not limited to depression, anxiety, loss of self-worth and damage to her reputation.

67.     Defendant's conduct in retaliating against Plaintiff was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive and/or exemplary damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1.     This court declare the actions complained of herein to be in violation of Title VII, ADEA, and AEPA;

2.     General and Special damages be awarded to Plaintiff and against Defendant in an amount proven at trial;

3.     Compensatory damages be awarded to Plaintiff and against Defendant in an amount proven at trial;

4.     Punitive or exemplary damages at an amount to be proven at trial;

6.     Liquidated damages be awarded to Plaintiff and against Defendant under the ADEA;

7.     Plaintiff be awarded her attorneys' fees for her claims under Title VII and the ADEA;

8. Plaintiff be awarded her costs; and

9. Plaintiff be awarded all other relief that this Court deems just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

DATED this 2nd day of August 2024.

    SCHLEIER LAW OFFICES, P.C.
    /s/Bradley H. Schleier
    Bradley H. Schleier
    Attorney for Plaintiff